UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-202-RBD-DAB

KERRYANNE PURKISS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the United States Department of Justice Criminal Division Fraud Section

(together "the Office" or "the United States") and the defendant,

KERRYANNE PURKISS, and the attorney for the defendant, Michael Ryan,

Esq., mutually agree as follows:

**A.**     **Particularized Terms**

    1.     Count Pleading To

        The defendant shall enter a plea of guilty to Count Five of the

Indictment. Count Five charges the defendant with wire fraud, in violation of

18 U.S.C. § 1343.

    2.     Maximum Penalties

        Count Five carries a maximum sentence of 20 years'

imprisonment, a fine of up to $250,000, or twice the gross gain caused by the

offense, or twice the gross loss caused by the offense, whichever is greater, a

Defendant's Initials ___

term of supervised release of not more than three years, and a special assessment of $100.

3.     Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Five are:

First:     the defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second:     the false pretenses, representations, or promises were about a material fact;

Third:     the defendant acted with the intent to defraud; and

Fourth:     the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

4.     Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One through Four and Counts Six through Ten of the Indictment, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.     No Further Charges

If the Court accepts this plea agreement, the Office agrees not to charge the defendant with committing any other federal criminal offenses

Defendant's Initials 

2

known to the Office at the time of the execution of this agreement, related to the charges giving rise to this plea agreement.

6. <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A and 18 U.S.C. § 3663(a) and (b), defendant agrees to make full restitution to the U.S. Small Business Administration in the amount of $395,833.

7. <u>Loss Amount</u>

The parties agree that the loss amount under USSG § 2B1.1(b)(1) is at least $395,833. The parties agree that the Office shall be able to advocate for a larger loss amount before the Court and that the Defendant may oppose any such argument.

8. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the Office has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the Office nor the defendant will be

allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to move pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the Office, and the defendant

Defendant's Initials 

agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C)  and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following:  the $395,833 in proceeds the defendant admits she obtained, as the result of the commission of the wire fraud scheme to which the defendant is pleading guilty, as well as:

a.    2017 Maserati Ghibli VIN #ZAM57XSL7H1211442 titled in the name of Kerryanne Samira Roiland; and

b.    Real property located at 1053 E Hancock Drive, Deltona, FL 32725 titled in the name of Tree House Cities, LLC.[1]

The defendant admits that the vehicle and the real property were purchased with proceeds she obtained from her wire fraud scheme.  The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

---

[1]  The defendant consents to the forfeiture of this property individually and on behalf of Tree House Cities, LLC.

Defendant's Initials

5

The defendant acknowledges and agrees that (1) the defendant obtained at least $395,833 as a result of the commission of the wire fraud scheme and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the

Defendant's Initials

6

issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the Office.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is

Defendant's Initials _____

7

entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the Office, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the Office in obtaining clear title to the forfeitable assets before the defendant's

Defendant's Initials 

8

sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

9

Defendant's Initials 

11.   <u>Removal - Notification</u>

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offenses to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

**B.   <u>Standard Terms and Conditions</u>**

1.   <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

Defendant's Initials _____

to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release

Defendant's Initials 

11

upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

     3.    <u>Immigration Consequences of Pleading Guilty</u>

        The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

     4.    <u>Sentencing Information</u>

        The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials 

5.      Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly

Defendant's Initials _____

13

authorizes the Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.    <u>Sentencing Recommendations</u>

      It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the Office regarding any recommendations by the Office are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The Office expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the Office's recommendations contained herein.

7.     <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the Office exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from her waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     <u>Middle District of Florida and Fraud Section Agreement</u>

It is further understood that this agreement is limited to the Office and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _____

15

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the Office and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of

Defendant's Initials 

witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.  <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.  <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the Office and the defendant with respect to the aforementioned guilty plea and no

Defendant's Initials _____

other promises, agreements, or representations exist or have been made to the

defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this _7th_ day of __April_____, 2023.

ROGER B. HANDBERG
United States Attorney

GLENN S. LEON
Chief, Fraud Section
Department of Justice

_____        _____
Kerryanne Purkiss                Katherine T. McCarthy
Defendant                        Criminal Division, Fraud Section
                                 Department of Justice

_____        _____
Michael Ryan, Esq.               Chauncey A. Bratt
Attorney for Defendant           Assistant United States Attorney
                                 Deputy Chief, Orlando Division

18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                         CASE NO. 6:22-cr-202-RBD-DAB

KERRYANNE PURKISS

<u>PERSONALIZATION OF ELEMENTS</u>

**<u>Count Five</u>**

    <u>First</u>:        Did you knowingly devise or participate in a scheme to defraud the U.S. Government by using false or fraudulent pretenses, representations, or promises?

    <u>Second</u>:     Were the false pretenses, representations, or promises about a material fact?

    <u>Third</u>:      Did you act with the intent to defraud?

    <u>Fourth</u>:     Did you cause to be transmitted by wire a communication in interstate commerce to help carry out the scheme to defraud, namely a wire transfer in the amount of $395,833 from Financial Institution 3 into More Than Enough's bank account?

Defendant's Initials _____     19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-202-RBD-DAB

KERRYANNE PURKISS

## FACTUAL BASIS

Kerryanne Purkiss ("Purkiss") fraudulently obtained a Paycheck Protection Program ("PPP") loan for approximately $395,833 by filing an application for her company, More Than Enough ("MTE"), containing false information including the number of employees, monthly payroll amount, and the intended use of the funds. In support of her PPP loan application, Purkiss submitted fabricated tax forms 940 and 1040c. Purkiss used the fraudulently-obtained PPP loan proceeds from the loan identified in Count Five, as well as the proceeds of other PPP loans she obtained, to purchase a residence in Deltona, Florida as well as to make other personal purchases including a Maserati and other vehicles.

Defendant's Initials _____

20

### *Background Regarding the CARES Act and PPP*

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 pandemic. Among its various provisions, the CARES Act authorized the SBA to guarantee loans through the Paycheck Protection Program (PPP), under which the full principal amount of the loans could qualify for forgiveness.

The PPP allowed qualifying small-businesses and other organizations to receive loans with a maturity of two years and an interest rate of one percent. Most businesses were ineligible to receive PPP loans unless they had fewer than 500 employees. PPP loan proceeds had to be used by businesses on qualifying expenses including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the loan to be forgiven if businesses spent the proceeds on these qualifying expenses within eight weeks of receipt and used at least 75 percent of the forgiven amount for payroll.

Under the PPP, the maximum loan amount a business could obtain was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula principally considered the borrower's aggregate payroll costs from the preceding twelve

Defendant's Initials 

months for all domestic employees. Once an average monthly payroll cost was established, the borrower multiplied that amount by 2.5 to arrive at the total maximum PPP loan amount. This payroll-based formula expressly excluded the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary.

### The PPP Application Process: the SBA Form 2483

To apply for a PPP loan, potential borrowers electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that administered the loan and served as custodian of the funds. On the SBA Form 2483, an authorized representative of the borrower had to make several certifications about her business operations and related information. Those certifications included, among others, that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes, or paid independent contractors as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

Further, when submitting the SBA Form 2483, the authorized representative had to certify that, should he knowingly use the PPP funds for

Defendant's Initials _LL_

22

unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant also had to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents. Such supporting documents could include payroll tax filings with the Internal Revenue Service ("IRS"), such as the Employer's Quarterly Federal Tax Return and the "IRS Form 941."

Finally, the applicant had to certify that he understood that should he knowingly make false statements on the forms, she was subject to criminal penalties.

### *Background regarding MTE*

The PPP loan application submitted for MTE indicated Purkiss was the president and sole owner of MTE. MTE was never registered with the state of Florida and never paid taxes to the state.

### *Purkiss' Submission of Fraudulent PPP Loan Application for MTE*

The CARES Act was signed into law on March 27, 2020. On or about June 25, 2020, Purkiss submitted a number of false or fraudulent documents to the lender (Financial Institution 3), including the following:

- A Paycheck Protection Program Borrower Application Form (SBA Form 2483) dated June 25, 2020, on which Purkiss falsely certified that MTE had 18 employees and an average monthly payroll of $157,850. On this form Purkiss confirmed that she was the president and 100% owner of MTE. Purkiss certified in this application, among other things, that she would use the funds "to retain workers and maintain payroll or

Defendant's Initials 

23

make mortgage interest payments, lease payments, and utility payments." She acknowledged that if the funds were knowingly used for unauthorized purposes "the federal government may hold me legally liable, such as for charges of fraud."

- Form 940 Employer's Annual Federal Unemployment Tax Returns for MTE signed by Purkiss for 2019. This form stated that MTE paid $1,893,987 to employees in 2019. In fact, this documents was fake, and MTE had not filed a Form 940 for 2019.

- Form 1040 Schedule C Profit or Loss From Business for 2019 signed by Purkiss. According to this form, MTE had a gross income of approximately $7,787,326 and paid $1,894,208 in wages during 2019. In fact, this document was fake, and Purkiss did not file any Form 1040 Schedule C for 2019.

### *Disbursement and Use of Funds*

On or about July 1, 2020, Financial Institution 3 wired the PPP proceeds to the bank account information provided for MTE.  Purkiss was the owner and signatory on that account (Bank of America account no. x8528).

Purkiss had at least 11 bank accounts at both Wells Fargo and Bank of America.  At the time Purkiss began receiving PPP funds for MTE and other companies in May 2020, the accounts had a cumulative balance of less than $2,000.  Purkiss combined the PPP loan proceeds she received for the MTE loan with other PPP proceeds and spent the funds on various items, including the following:

- June 1, 2020 purchase of a Maserati for approximately $38,000
- August 2020 purchase of a residence in Deltona, Florida for approximately $230,000

24

Defendant's Initials 

### *Venue and Use of Interstate Wires*

Financial Institution 3 provided Purkiss the PPP funds for the MTE loan via a wire into her Bank of America account (no. x8528).  Bank of America processes its wire transactions using a software application that simultaneously utilizes servers in both Texas and Virginia.

Purkiss lived and worked in the Middle District of Florida while applying for PPP loans, including the loan in Count Five.  Additionally, the address listed for More Than Enough was in the Middle District of Florida.

Defendant's Initials _____

25