# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# CASE NO. 6:22-cr-202-RBD-RMN

UNITED STATES OF AMERICA

vs.

KERRYANNE PURKISS
a/k/a KERRYANNE ROILAND

     **Defendant.**

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Kerryanne Purkiss. The Defendant is scheduled for sentencing on August 7, 2023 for her conviction by guilty plea to one count of wire fraud in violation of Title 18, United State Code, Section 1343. The offense stems from the Defendant's role in a scheme to obtain fraudulent Paycheck Protection Program ("PPP") loans. As set forth below, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 27 months, which is the low end of the applicable Sentencing Guidelines range. The sentence recommended herein is sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a).

**I.    BACKGROUND**

    **A.    The PPP**

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 pandemic. Among its various provisions, the CARES Act authorized the Small Business Administration ("SBA") to guarantee loans through the PPP, under which the full principal amount of the loans could qualify for forgiveness. The PPP authorized $349 billion

1

in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP funding. These funds were designed to address the unprecedented crisis facing Americans—especially business owners and their employees, whose livelihoods were threatened by the public health emergency.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were distributed by banks who had existing relationships with many of the applicants. To apply, individuals electronically submitted an SBA Form 2483 with supporting payroll documentation to a participating financial institution that administered the loan and served as custodian of the funds. On Form 2483, an authorized representative of the borrower had to make several certifications about his/her business operations including, among others, that: (i) the applicant was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes, or paid independent contractors as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses. Further, when submitting the SBA Form 2483, the authorized representative had to certify that, should he/she knowingly use the PPP funds for unauthorized purposes, the United States could hold him/her legally liable, including for charges of fraud. The applicant also had to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

B.     **Offense Conduct**

Between May and August of 2020, while the country grappled with the COVID-19 pandemic, the Defendant defrauded the SBA and its affiliated lenders of approximately $715,089.88 in funds intended for pandemic relief. Presentence Report ("PSR") at ¶ 44.[1] Using falsified tax documents and other falsified financial filings, the Defendant fraudulently obtained federal disaster relief funds from the PPP in the names of corporate entities under her control, entities she knew were not entitled to pandemic relief for which she applied.

*Count 5*

The Defendant pleaded guilty to Count Five, which charged her with a PPP loan fraudulently obtained on behalf of More Than Enough ("MTE"). The PPP loan application indicated that the Defendant was the president and sole owner. Plea Agreement at 23; PSR at ¶ 42. MTE was never registered with the state of Florida and never paid state taxes. *Id.* On or about June 25, 2020, the Defendant submitted several false documents in support of her application. Plea Agreement at 23; PSR at ¶ 42. On SBA Form 2483, the Defendant falsely certified that MTE had eighteen employees and an average monthly payroll of $157,850. Plea Agreement at 23-24; PSR at ¶ 42. She certified that she would use the funds "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." *Id.* The Defendant also submitted IRS Form 940 Employer's Annual Federal Unemployment Tax Returns for MTE for 2019. Plea Agreement at 24; PSR at ¶ 42. This document was fake, and MTE had not filed a Form 940 for 2019. *Id.* Finally, the Defendant filed IRS Form 1040 Schedule C Profit or Loss

---

[1] Pursuant to the Plea Agreement, the Defendant agreed that the loss caused by her offense was at least $395,833 (the amount of the loan in Count 5) and that the Government could argue at sentencing that the appropriate loss calculation encompassed all five loans in the scheme described in the Indictment. Plea Agreement at 3. On July 28, 2023, defense counsel informed the undersigned that the Defendant consented to the $715,089.88 loss/restitution calculation that encompassed the loans in Counts 1-5.

from Business for 2019. *Id.* This document was also falsified. *Id.* On or about July 1, 2020, the PPP proceeds were wired to the bank account information provided for MTE. Plea Agreement at 24; PSR ¶ 43. The Defendant used the PPP funds to purchase personal items including a Maserati and a residence in Deltona, Florida. *Id*.

### *Counts 1-4*

In addition to the MTE loan to which the Defendant has pled guilty, the Defendant fraudulently obtained four additional PPP loans.

*Caleb Brown Group*

On May 22, 2020, a PPP loan application was submitted on behalf of Caleb Brown Group for $37,500. GX-1. The Caleb Brown Group was registered with the Florida Division of Corporations in September 2011 and administratively dissolved in September 2013. GX-2. The Florida Department of Revenue confirmed that the company was not registered and had not filed taxes with the state. In support of the application, falsified 2019 Form 1040c and other documentation were provided. GX-3. The IRS confirmed that the Defendant did not file any 1040c's (or any other tax forms) in 2019. The Caleb Brown Group purported to be an "education services and consultation" business with over $500,000 in gross receipts in 2019. *Id*. In State of Florida corporate/incorporation records, the Defendant was listed as the CEO and registered agent of the Caleb Brown Group. GX-2.

Loan proceeds were deposited into a bank account in the name of the MTE, for which the Defendant was the only authorized signatory. A successful forgiveness application for this PPP loan was made in March 2021, which the Defendant signed as the applicant. GX-4.

*Miguel Ellis*

On June 2, 2020, a PPP loan application was submitted on behalf of Miguel Ellis, Inc ("Miguel Ellis") for $104,400. GX-5. The Defendant was listed as the sole owner of Miguel Ellis. *Id*. The Florida Division of Corporations confirmed that the company was registered effective August 2019 and administratively dissolved in September 2020. GX-6. In support of the application, a falsified 2019 Form 940 (for Miguel Ellis LLC – same address as Miguel Ellis, Inc.) was provided. GX-7. The IRS confirmed that this form was never filed.

On June 3, 2020, the loan was funded into a bank account on which the Defendant was the sole signatory. A successful forgiveness application for this PPP loan was made, signed by the Defendant, in March 2021. GX-8.

*Red Verse Records*

On May 26, 2020, a PPP loan application was submitted on behalf of Red Verse Records ("Red Verse") for $60,321.88. GX-9. The Florida Division of Corporations confirmed that the company was registered in 2017 and dissolved in September 2018. GX-10. The Florida Department of Revenue confirmed the company had not registered and did not file state taxes.

The Defendant was listed as the President and sole owner. GX-9. In support of the application, a falsified 2019 Form 1040c as well as other documentation was provided. GX-11. The IRS confirmed that the Defendant filed no 1040c's (or any other tax forms) in 2019. The loan proceeds were deposited in bank account for which the Defendant was the only authorized signatory at the time the funds were deposited.

*Imperature*

On May 29, 2020, a PPP loan application was submitted on behalf of Imperature for $117,035. GX-12. Shortly before the application, the Defendant registered Imperature in May 2020 with the Florida Division of Corporations. GX-13. Florida Department of Revenue

5

confirmed that Imperature never registered or paid taxes to the state. The Defendant was listed as the President and sole owner. GX-12. In support of the application, a falsified 2019 Form 1040c as well as other documentation were provided. GX-14. The IRS confirmed that the Defendant filed no 1040c's (or any other tax forms) in 2019.

This loan was funded on June 11, 2020 into the Miguel Ellis bank account on which the Defendant was the sole signatory.

In total, the Defendant obtained approximately $715,089.88 in fraudulent PPP loans.

## II. PROCEDURAL HISTORY

On December 7, 2022, the Defendant was charged by Indictment with five counts of wire fraud, in violation of Title 18, United States Code, Sections 1343 (Counts One through Five), and five counts of engaging in a monetary transaction in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957 and 2 (Counts Six through Ten). On April 12, 2023, Defendant pleaded guilty to Count Five of the Indictment. PSR at ¶ 14. Sentencing is scheduled for August 7, 2023.

## III. SENTENCING GUIDELINES CALCULATIONS

As explained below, the United States submits that the Defendant's Total Offense Level is 18. At Criminal History Category I, this produces the respective advisory Guidelines range of 27-33 months of imprisonment. The United States concurs with the Guidelines range computation in the PSR, which is as follows:

| | |
|---|---|
| Base Offense Level, § 2B1.1(a)(1) | 7 |
| Loss greater than $540,000 but less than $1,500,000, §2B1.1(b)(1)(H) | 14 |
| Acceptance of Responsibility and Timely Notification § 3E1.1(a) and (b) | (3) |

**Total Offense Level** 18[2]

## IV. CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States.[3]

### A. Nature and Circumstances of the Offense

The Defendant's criminal conduct was serious, motivated by personal greed during an unprecedented global crisis. The PPP emerged from the economic destruction caused by the COVID-19 pandemic. Its purpose was to help small business owners and their employees whose lives were jeopardized. The Defendant took advantage of the program by submitting false applications claiming to have employees and payroll that did not exist. Those applications were supported by falsified tax forms. The Defendant's exploitation of the crisis not only cost the government, the SBA, and affiliated lenders time and money, but also diverted funds that could have been used the way PPP loans were intended: to assist struggling businesses and to keep people employed. Instead, the Defendant took money that was earmarked for legitimate small businesses and used it for her own personal enrichment. This was not a victimless crime. The PPP was not a limitless pot of money. By taking money she was not entitled to, the Defendant defrauded taxpayers who helped fund the program and the SBA which guarantees these loans, and made it more difficult for legitimate loan applicants to obtain pandemic relief funds or reduced the amount given to legitimate businesses trying to temper the storm of COVID-19. As such, the Defendant's

---

[2] The Government agrees with the PSR in that under the proposed amendments to the Sentencing Guidelines for 2023, the Defendant would be eligible for a downward adjustment of two points as she is a zero-point offender. PSR at ¶ 114.
[3] The Government concurs with the finding in the PSR that there are no factors that would warrant a departure from the applicable Guidelines Range. PSR at ¶ 112.

conduct, which through the diversion of relief money caused direct harm to a vulnerable public, warrants a meaningful custodial sentence.

### B. The Need for Adequate Deterrence

A sentence within the Guidelines range is necessary to afford adequate deterrence and to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2).

Given that criminal conduct like the Defendant's is typically more difficult to detect and prosecute than sudden crimes of passion or opportunity, there is a greater need for general deterrence. The Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014). This case was motivated by greed at time when millions of Americans were suffering from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance. Such a sentence will signal to the Defendant and other offenders that there are serious consequences for defrauding government relief programs. Individuals, like the Defendant, who seek to defraud these programs not only drain the program of limited funding, but they also make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence should serve as a warning and deterrent to others inclined to exploit pandemic relief programs. *See, e.g.*, *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). Here, the Government's proposed sentence will help to deter other fraudsters, like the Defendant, who

believe that they can generate income through fraudulent schemes against government agencies during a time of crisis.

### C. The Sentencing Commission's Policy Statement

"In deciding a sentence, district courts should consider the policies behind the applicable guidelines provision." *United States v. Crisp*, 454 F.3d 1285, 1291 (11th Cir. 2006); *see also* 18 U.S.C. § 3553(a)(5) (directing district courts to consider the Sentencing Commission's policy statements). For fraud-related offenses, the Sentencing Commission has explained that "along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under [U.S.S.G. § 2B1.1]." U.S.S.G. § 2B.1.1, cmt. backg'd. The Sentencing Commission's policy statement supports imposing a Guidelines sentence in this case, where the Defendant's Guidelines are based almost entirely on the amount of loss attributable to her offense.

## V. RESTITUTION AND FORFEITURE

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). As set forth in the PSR (¶ 108), it is the Government's position that the Defendant owes restitution in the amount of $715,089.88. It is well established that forfeiture and restitution are separate and distinct parts of a defendant's sentence that serve different purposes, and that they both are mandatory. As a result, the Government could seek forfeiture and also seek a restitution order that the Defendant would be required to pay out of their remaining assets.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of 27 months, which is the low end of the applicable Sentencing Guidelines range for the conviction under Title 18, United States Code, Section 1343. The United

States further requests the Court sentence the Defendant to a term of supervised release pursuant to the Guidelines range of one to three years. The United States also requests that the Court order restitution and a special assessment.

Respectfully Submitted,

GLENN S. LEON
CHIEF, FRAUD SECTION

By:
KATHERINE MCCARTHY
Trial Attorney, Fraud Section
U.S. Department of Justice
1400 New York Ave NW
Washington, DC 20530
(202) 721-7932
katherine.mccarthy@usdoj.gov

U.S. v. Kerryanne Purkiss                    Case No. 6:22-cr-202-RBD-DAB

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 31, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice to all parties of record.

/s/ Kate T. McCarthy

Kate T. McCarthy
New York State Bar No. 5650163
Trial Attorney, Fraud Section USDOJ
1400 New York Avenue, NW
Washington, DC 20009
Telephone: 202-714-7932
E-Mail:
Katherine.McCarthy@usdoj.gov